FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 9, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENT CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

DAVION L. JEFFERSON,

        Defendant - Appellant.

No. 17-3150

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 2:15-CR-20012-CM-1)**

---

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Pubic Defender, with him on the supplemental briefs), Office of the Federal Public Defender, Kansas, City, Kansas, for Appellant.

Jared S. Maag, Assistant United States Attorney (Stephen R. McAllister, United States Attorney, and James A. Brown, Assistant Untied States Attorney, Chief, Appellate Division, with him on the supplemental briefs), Office of the United States Attorney, Kansas City, Kansas, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

This court previously affirmed Davion L. Jefferson's conviction of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), (b)(1), and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *See United States v. Jefferson*, 911 F.3d 1290 (10th Cir. 2018). As we set forth in *Jefferson I*, Jefferson committed five robberies in eleven days, and during the last two he brandished a gun. For his crimes, Jefferson was sentenced to 454 months' imprisonment. Part of this calculation included a mandatory minimum sentence of 25 years' imprisonment imposed under 18 U.S.C. § 924(c)(1)(C)(i) based on his violent felonies.

Following our decision, Jefferson filed a petition for certiorari in the Supreme Court of the United States. On January 13, 2020, the Supreme Court granted Jefferson's petition, vacated our judgment, and remanded Jefferson's case to this court for the limited purpose of considering the applicability of the newly-enacted First Step Act of 2018, Pub. L. No. 115-391 (2018), to Jefferson's case. *See Jefferson v. United States*, 140 S. Ct. 861 (2020). Under the First Step Act, eligible defendants may file motions for sentence reductions based on the Act's retroactive amendment of 18 U.S.C. § 924(c), which eliminated enhanced sentences for defendants who did not have a prior § 924(c) conviction. We then ordered the parties to file supplemental briefing to address the First Step Act, as well as whether remand to the district court was appropriate for it to consider the

-2-

applicability of the First Step Act or the effect of *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019), an intervening decision issued by this court.

## Analysis

We consider two issues: first, the scope of the Supreme Court's remand; and second, because we conclude the scope is limited, whether the First Step Act affords Jefferson relief.

### A. Limited Remand

The Supreme Court's remand is limited. In its remand order, the Court stated that "[t]he judgment is vacated, and the case is remanded to the United States Court of Appeals for the Tenth Circuit for the court to consider the First Step Act of 2018, Pub. L. No. 115-391." *Jefferson*, 140 S. Ct. at 862. This language does not open up the entire case for reconsideration. Instead, it requires us to consider only the applicability of the First Step Act. As a result, our only job on remand is to determine whether the First Step Act affords Jefferson relief and we therefore cannot address his additional arguments concerning intervening case law.[1]

---

[1] Jefferson argues *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019), is an intervening decision that overruled our holding in *United States v. Melgar-Cabrera*, 892 F.3d 1053 (10th Cir. 2018), that Hobbs Act robbery is categorically a crime of violence under 18 U.S.C. § 924(c)(3)(A). If correct, Jefferson would not be subject to the 25-year mandatory minimum sentence under § 924(c)(1)(C)(i) for his Hobbs Act robbery convictions. But even if this issue is

(continued...)

Jefferson disagrees.  He argues that the Supreme Court "could have, but did not, vacate the judgment in part."  Aplt. Second Supp. Br. at 6.  Instead, because the Supreme Court simply "vacated" the judgment, *see Jefferson*, 140 S. Ct. at 862, Jefferson contends the entirety of our prior judgment is not law of the case and we therefore can, and should, now consider all intervening changes in law.

But Jefferson's contention ignores the Supreme Court's direct language vacating our judgment: "The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Tenth Circuit for the court *to consider the First Step Act of 2018, Pub. L. No. 115-391 (2018)*."  *Id*. (emphasis added).  Although the Supreme Court did not explicitly state that it vacated our judgment "in part," its limitation of our consideration to the First Step Act did as much.

Thus, we only consider whether the First Step Act affords Jefferson relief.

---

[1](...continued)
within the scope of the remand—and it is not—*Bowen* had no such effect.  Section 924 imposes mandatory minimum sentences for defendants who commit "crimes of violence."  In *Bowen*, we held the federal witness-retaliation statute, 18 U.S.C. § 1513(b), does not qualify as a crime of violence under § 924(c)(3)(A) because it includes witness retaliation through *non-violent property damage*.  936 F.3d at 1104.  Indeed, one can be convicted of § 1513(b) for spray painting a car.  *Id*.  But the same is not true of Hobbs Act robbery.  In *Melgar-Cabrera*, we explained that Hobbs Act robbery necessarily entails the use or threatened use of *violent force against a person or property*.  892 F.3d at 1065.  Without violent force, there is no Hobbs Act robbery and no "crime of violence."  Thus, *Melgar-Cabrera* is undisturbed by *Bowen*.

-4-

### B. First Step Act

The First Step Act affords some criminal defendants relief in the form of reduced sentences. If applicable to Jefferson, the First Step Act would eliminate the 25-year mandatory minimum sentence that is part of his current sentence.[2] But we need only look to the plain and unambiguous language of the First Step Act to conclude that it does not afford Jefferson relief. The First Step Act provides:

> **SEC. 403. CLARIFICATION OF SECTION 924(C) OF TITLE 18, UNITED STATES CODE.**
>
> (a) IN GENERAL.—Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking "second or subsequent conviction under this subsection" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final".
>
> (b) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was *committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment*.

---

[2] Jefferson was convicted of two counts of violating 18 U.S.C. § 924(c). Section 924(c)(1)(C)(i) imposes a mandatory minimum sentence of 25 years' imprisonment if "a violation of this subsection . . . occurs after a prior conviction under this subsection has become final." Because of this, his two convictions were stacked, resulting in a mandatory minimum sentence of 25 years' imprisonment. The First Step Act amended this language in certain circumstances to eliminate stacking § 924(c) convictions, also eliminating the mandatory minimum sentence.

First Step Act § 403 (emphasis added).

By its plain language, § 403 is inapplicable to defendants whose sentences were imposed on or before the First Step Act's enactment on December 20, 2018. *See* First Step Act § 403(b). Jefferson's sentence was imposed on June 21, 2017—a year and a half too early. The First Step Act therefore affords him no relief.

Jefferson makes numerous arguments disputing this conclusion. All of them center around his contention that the First Step Act applies to defendants like him who had pending cases on appeal when the First Step Act was enacted. None of these arguments are persuasive.

Jefferson first argues he is eligible for First Step Act relief because his sentence was not yet "imposed" within the meaning of § 403(b) at the time of enactment because his appeals had not yet been fully exhausted. Jefferson's interpretation of "imposed" contradicts the term's plain meaning and common usage in federal sentencing law. Indeed, a sentence is "imposed" "when the district court announces it, not when appeals are exhausted." *United States v. Jordan*, 952 F.3d 160, 172 (4th Cir. 2020), *cert. denied*, No. 20-256, 2021 WL 78100 (U.S. Jan. 11, 2021); *see also United States v. Garduno*, 506 F.3d 1287, 1290 (10th Cir. 2007) (holding a sentence is imposed within the meaning of Rule 11 when the district court announces the sentence); *United States v. Kinney*, 915

F.2d 1471, 1472 (10th Cir. 1990) ("Defendant . . . appeals his sentence *imposed* following his plea of guilty . . . ." (emphasis added)); *Robinson v. United States*, 147 F.2d 915, 915–16 (10th Cir. 1945) (discussing circuit court's prior remand "with instructions to vacate the sentences and *impose* new sentences" (emphasis added)); *Young v. United States*, 943 F.3d 460, 463 (D.C. Cir. 2019) ("In standard usage . . . a sentence is 'imposed' when the district court passes sentence on a defendant."); Fed. R. Crim. P. 32(a)(2) (applicable to offenses committed prior to Nov. 1, 1987) ("After *imposing* sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal . . . ." (emphasis added)); Fed. R. Crim. P. 11(e) ("After the court *imposes* sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." (emphasis added)).

Moreover, Jefferson's argument is weakened by a comparison of §§ 403(a) and (b). These subsections demonstrate Congress's ability to differentiate between the imposition of a sentence and the finality of a sentence. In § 403(a), Congress amended 18 U.S.C. § 924(c) to include language about final convictions. *See* First Step Act § 403(a) (amending § 924(c)(1)(C) language to add ". . . after a prior conviction . . . has become final"). Such language is absent in § 403(b). "Where Congress includes particular language in one section of a

-8-

statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted; alteration incorporated). As a result, we presume that the absence of finality language in § 403(b) was an intentional and purposeful act of Congress to limit the First Step Act's application to defendants whose sentences were imposed—or announced by the district court—after enactment, not also to defendants whose sentences were pending on appeal.

Our conclusion that the First Step Act is inapplicable to defendants whose sentences were pending on appeal at the time of the Act's enactment joins the unified current of circuit courts addressing the issue. *See United States v. Gonzalez*, 949 F.3d 30, 43 (1st Cir. 2020), *cert. denied*, 1451 S. Ct. 327 (rejecting defendant's First Step Act eligibility argument that a sentence is imposed when it is final because a "sentence is imposed before an appeal from that sentence can be taken"); *id.* at 42 ("[Defendant's] contention conflates finality with imposition, and the [First Step] Act's plain language defeats it."); *United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019) ("'Imposing' sentences is the business of district courts, while courts of appeals are tasked with reviewing them . . . ."); *id.* ("Congress's use of the word 'imposed'[in § 403(b)] . . . clearly excludes cases in which a sentencing order has been entered by a district court from the reach of the

-9-

amendments made by the First Step Act."); *Jordan*, 952 F.3d at 172 ("[W]e think [the defendant's] sentence was 'imposed' in the district court, rendering § 403(a) inapplicable to his case."); *United States v. Richardson*, 948 F.3d 733, 749 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 344 (rejecting defendant's argument that he was eligible for First Step Act relief even though his appeal was pending at the time of enactment because "an appeal follows the imposition of a sentence; it is not part of it"); *United States v. Pierson*, 925 F.3d 913, 927 (7th Cir. 2019), *vacated on other grounds*, 140 S. Ct. 1291 (2020) (finding defendant sentenced prior to First Step Act's enactment ineligible for First Step Act relief because "[i]n common usage in federal sentencing law, a sentence is 'imposed' in the district court, regardless of later appeals").

The remainder of Jefferson's arguments rest on a false premise: that the First Step Act is ambiguous. Section 403(b)'s plain language is capable of one reasonable interpretation, that § 403's amendments only apply to defendants whose sentences were imposed after the enactment of the First Step Act. *See* First Step Act § 403(b). So, Jefferson's arguments that his counter interpretation is supported by the title of § 403, by the remedial purpose of the First Step Act, and by the rule of lenity all fail because each of these interpretive aids may only enter the statutory interpretation analysis if the First Step Act's plain language is ambiguous—and it is not. *See Bd. of Cty. Commissioners of Boulder Cty. v.*

*Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 804 (10th Cir. 2020) (The interpreting court must first "turn to the statute's plain meaning, as a statute clear and unambiguous on its face must be interpreted according to its plain meaning."); *id.* (Only if a statute is ambiguous—"capable of being understood by reasonably well-informed persons in two or more different senses"—may the court "also look to traditional canons of statutory construction to inform [its] interpretation, and . . . seek guidance from Congress's intent, a task aided by reviewing the legislative history . . . [or] by knowing the purpose behind the statute."); *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section *can aid in resolving an ambiguity* in the legislation's text." (emphasis added)); *United States v. Wilson*, 10 F.3d 734, 736 (10th Cir. 1993) ("[The rule of lenity] is not to be invoked lightly. It is not applicable *unless there is a grievous ambiguity* or uncertainty in the language and structure of the Act." (internal quotation marks omitted) (emphasis added)).

A purpose of the First Step Act undoubtedly is to reform and reduce federal incarceration. But with § 403(b), Congress made clear these reforms do not benefit every defendant. Congress drew a line between defendants whose sentences were imposed on or after the First Step Act's enactment—who may benefit—and defendants whose sentences were imposed before the First Step

-11-

Act's enactment—who may not benefit.  The role of this court is not to redraw that line, and we accordingly decline Jefferson's invitation to do so here.

For the reasons outlined above, we conclude the First Step Act does not afford Jefferson relief and AFFIRM his sentence.