**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael R. SIDENER,**
**Defendant–Appellant.**

No. 88–3126.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1989.

Decided June 9, 1989.

As Amended June 29, 1989.

Patrick J. Chesley, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Howard W. Feldman, Feldman & Wasser, Springfield, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Defendant Michael Sidener was convicted of (1) conspiring with Bridget Jones and Johannas Eiche (Jones' common-law husband) to violate the conditions of Jones' release on bond pending sentencing following her conviction and (2) aiding and abetting Jones with violating her conditions by not appearing for her sentencing. Sidener filed motions for transfer of venue (to Texas), disqualification of the judge (Judge Mills) and dismissal of the two count indictment (alleging a double jeopardy violation). All motions were denied by Judge Mills and Sidener was convicted by a jury on both charges. Sidener's renewed motion to dismiss the indictment was likewise denied. Judge Mills imposed consecutive three-year sentences on each count. On appeal, Sidener challenges Judge Mills' orders denying Sidener's motions and also argues that substantial evidence did not support his conviction. We affirm.

## FACTS

Michael Sidener, a former private investigator and police officer, had invested in an "advance fee loan program" run by Bridget Jones and her late husband (Richard Jones). Bridget Jones was indicted during the summer of 1986 for conspiracy, wire fraud and obstruction of justice in connection with her bogus loan program. Jones was released on bond pending trial with the condition, among others, that she appear for all court proceedings and sentencing.

Jones' trial began on March 10, 1987. Sidener attended most of it and heard closing arguments on March 20, 1987. While attending the trial, Sidener stayed at Jones' residence. The jury reached its verdict on March 20th but, because Jones was ill, the

verdict was sealed until Monday, March 23, 1987. Sidener was not present when the verdict was read or when Judge Mills continued Jones' bond until sentencing. Sentencing for Jones was originally scheduled for May 22, 1987 but was rescheduled to May 18, 1987. Jones did not appear in court for sentencing on either day.

At Sidener's trial, the government presented evidence which included the following: (1) Sidener was told that Jones was convicted; (2) Sidener discussed an appeal with Jones and asked why the jurors were not polled following the verdict; (3) Sidener made arrangements with a private pilot, Michael Oldenburg, to transport Jones and her children out of the United States for $5000; (4) Sidener sought documents, including birth certificates for Jones' children, which would be necessary to enter the Bahamas; (5) Sidener helped Jones sell her car; (6) Sidener helped Jones and her children fly to the Bahamas; (7) Sidener returned to Jones' Illinois residence and destroyed some of her records and credit cards; (8) Sidener attempted to make business investments in the Bahamas; (9) Sidener bought clothes for Jones and her children while in the Bahamas; and (10) on April 13th, Sidener told Nancy Mozingo, who was involved in his investments, that he had risked his freedom by helping Jones get out of the country. Sidener claimed at trial that he did not know that Bridget Jones was convicted until April 9, 1987 and that he was originally told by Jones and Eiche that Jones was acquitted.

Jones' travels were explained by Sidener as follows. On March 27, 1987, four days after the guilty verdict was read, Eiche received information via a telephone call that the Aryan Nations had a contract out on the lives of Jones and her children. That night, Sidener, Eiche, Jones and one of Jones' sons drove to Missouri in a car owned by Jones where they picked up Jones' other son and then went to Texas. They stayed at a motel and then moved to Sidener's residence in Daisetta, Texas.

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

They later flew to the Bahamas with Sidener's help.

Sidener claimed that he helped Jones move to the Bahamas so that she could be protected from any attempts on her life and that he himself traveled to the Bahamas to attend to business investments (promotion of a cattle program). He also contended that any other involvement with Jones was related to his investment in her bogus loan program. The government's chronology of events ended with a trip Sidener made to the Bahamas on May 6th or 7th. Jones' sentencing was originally scheduled for May 22nd but later rescheduled for May 18th. Sidener claimed that he last saw Jones in mid-April.

## ANALYSIS

### 1. Recusal

Sidener filed a motion requesting that Judge Mills recuse himself. The standard for recusal is as follows:

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a). Sidener contended that Judge Mills' impartiality was reasonably questionable based on the fact that Mills had presided over Jones' trial, imposed the conditions of release for Jones and "suffered" the consequences of Jones not showing up for sentencing.

We have stated that in order to preserve a recusal challenge under § 455(a), a defendant must immediately move for a writ of mandamus if the district judge denies his motion. *United States v. Balistrieri*, 779 F.2d 1191, 1205 (7th Cir. 1985), *cert. denied, DiSalvo v. United States*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). *See also Matter of Nat'l Union Fire Ins. Co. of Pittsburgh*, 839 F.2d 1226, 1227 (7th Cir.1988) (reaffirming *Balistrieri*). Sidener did not cite *Balistrieri* in his moving brief. In response to the government's brief, Sidener requests that we reverse *Balistrieri*. Although the Sixth Circuit has adopted a different rule, *In re the City of Detroit*, 828 F.2d 1160, 1165–67 (6th Cir.1987) (recusal decision is reviewable only after final judgment is entered), Sidener does not make a compelling argument for overturning *Balistrieri*. Accordingly, by not filing a petition for a writ of mandamus, Sidener has waived his recusal argument.

In any event, Sidener has not made a sufficient showing that Judge Mills should have recused himself. A judge is presumed to be impartial. *United States v. Baskes*, 687 F.2d 165, 170 (7th Cir.1981). The mere fact that a judge has some knowledge concerning a case is not, in the absence of some evidence of a lack of impartiality, grounds for disqualification. Judges inevitably learn facts concerning a case through pre-trial motions and hearings. Indeed, under Sidener's contention, recusals would be commonplace and the administration of judicial proceedings, especially in criminal cases, would be severely undermined.

### 2. Double Jeopardy

Sidener was indicted for and convicted of conspiring with Jones and Eiche to violate the conditions of Jones' release and aiding and abetting Jones to violate the conditions of release by failing to appear at sentencing. Sidener contends that the charges and conviction were based on the same evidence and were therefore in violation of the Fifth Amendment's prohibition against double jeopardy.

Under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court set out the often cited rule that there is no double jeopardy problem if a defendant is charged with offenses where each requires proof of a fact that the other does not:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. Conspiracy and aiding and abetting require proof

of a fact not common to each and are separate punishable offenses. *United States v. Beck,* 615 F.2d 441, 449 n. 9 (7th Cir.1980). *See also United States v. Nelson,* 599 F.2d 714, 716 (5th Cir.1979), *United States v. Mainieri,* 691 F.Supp. 1394, 1397–98 (S.D.Fla.1988) and *United States v. Goff,* 847 F.2d 149, 175 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988). In fact, the double jeopardy clause is not violated even if evidence used to prove each offense "overlaps." *Mainieri,* 691 F.Supp. at 1397–98.

In addition, we have noted that "[d]ouble jeopardy is not violated by a trial on a substantive count and a conspiracy count." *United States v. Cortwright,* 528 F.2d 168, 176 (7th Cir.1975). *See also United States v. Gabriel,* 525 F.Supp. 173, 180–81 (N.D. Ill.1981) *aff'd,* 692 F.2d 759 (7th Cir.1982) (unpublished opinion), *cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983) (the double jeopardy clause was not violated by a conviction for conspiracy to counterfeit and counterfeiting).

Sidener relies on the Sixth Circuit's opinion in *United States v. Austin,* 529 F.2d 559, 561 (6th Cir.1976), where the court held that the double jeopardy test is whether or not the "same evidence" is used to prove the charged offenses. That test has been specifically rejected by other circuits. *See, e.g., United States v. Cowart,* 595 F.2d 1023, 1029, 1034 (5th Cir.1979); *United States v. Rubalcaba,* 811 F.2d 491, 495 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 107, 98 L.Ed.2d 66 (1987); *United States v. Udey,* 748 F.2d 1231, 1237–38 (8th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985); *United States v. Collins,* 779 F.2d 1520, 1527 (11th Cir.1986); *United States v. Cerone,* 830 F.2d 938, 944–45 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988); *United States v. Savaiano,* 843 F.2d 1280, 1292 (10th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988); *United States v. Muhammad,* 824 F.2d 214, 218 (2d Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 716, 98 L.Ed.2d 666 (1988). Indeed, the Sixth Circuit has itself retreated somewhat from the same evidence test and limited the application of *Austin.* *United States v. Fife,* 573 F.2d 369, 372–73 (6th Cir.1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977); *United States v. McCullah,* 745 F.2d 350, 355–56 (6th Cir. 1984). In sum, Sidener's double jeopardy argument lacks merit.

### 3. Venue

Sidener moved for a transfer of venue, contending that venue was improper in the Central District of Illinois since, according to him, his acts predominantly occurred outside of Illinois. He argued that the only event which occurred in Illinois was the burning of Jones' credit cards, which the government witness Henry Deavers admitted that he did. We disagree.

■ Consistent with U.S. Const., Art. III, Sec. 2, the Federal Rules of Criminal Procedure provide as follows:

> [e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

Fed.R.Crim.P. 18. In addition, where an offense begins in one location and continues in others, venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). *See also United States v. Chappell,* 854 F.2d 190, 191–93 (7th Cir. 1988) and *Andrews v. United States,* 817 F.2d 1277, 1279–80 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987).

The alleged acts began in the Central District of Illinois and continued elsewhere. The government presented circumstantial evidence that the conspiracy was entered into in Illinois at Jones' residence in Bloomington. Sidener was at Jones' residence shortly after he learned of her conviction, they then discussed grounds for an appeal and questioned why the jury was not polled, and the agreement to flee apparently occurred at Jones' residence since they

left a few days later. In addition, Sidener made arrangements for Jones' flight to the Bahamas using a telephone at Jones' residence, the trip to flee began in Bloomington, Illinois, and birth certificates were sent to and received at Jones' Illinois residence. All of these acts occurred in the Central District of Illinois, not including the burning of Jones' credit cards over which there is some dispute.

■ Venue for failing to appear in court as required by a condition for release is proper in the district where a defendant was released on bond or was ordered but refused to appear. *Chappell,* 854 F.2d at 194. Thus, venue for Bridget Jones on her bail jumping offense was proper in the Central District of Illinois. The same is true for an aider and abetter who gives assistance to the person released on bond even if the assistance is given in another district. *Hett v. United States,* 353 F.2d 761, 763 (9th Cir.1965), *cert. denied,* 384 U.S. 905, 86 S.Ct. 1339, 16 L.Ed.2d 358 (1966). Accordingly, we find that the prosecution was proper in the Central District of Illinois.

Finally, Sidener argues that it would have been more convenient to have the trial in Texas, based on the location of defense witnesses. Although he does not say so, this argument is based on Fed.R.Crim.P. 21(b) which provides as follows:

> For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district.

There were several witnesses in Illinois, including two defense witnesses and seven of fifteen government witnesses. Sidener did not establish that a transfer was necessary for "the convenience of the parties and witnesses and in the interest of justice." Moreover, he disputed evidence at trial which pertained to events in Illinois, not Texas. Finally, our analysis of other pertinent factors, including the location of documents, the place of the defendant's business (he had no particular location) and the expense to parties, *see Platt v. Minne-* *sota Mining & Mfg. Co.,* 376 U.S. 240, 243–44, 84 S.Ct. 769, 771–72, 11 L.Ed.2d 674 (1964) and *United States v. Zylstra,* 713 F.2d 1332, 1336 (7th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983), shows that Illinois was just as convenient a forum as any other, if not more convenient. Judge Mills' decision to deny Sidener's motion was not an abuse of discretion.

### 4. Sufficiency Of The Evidence

■ Sidener's final argument is that his actions are "too remote in time to be considered as part of the cause for the failure of Bridget Jones to appear for sentencing." Sidener cites no cases in support of this argument and we interpret Sidener's argument as one that the evidence was insufficient to sustain his conviction. He does not claim that the jury was improperly instructed. Accordingly, we must determine whether or not, viewing the evidence in a light most favorable to the government, a rational jury could have found Sidener guilty of conspiracy and aiding and abetting beyond a reasonable doubt. *United States v. Riviera,* 855 F.2d 420, 424 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 511, 102 L.Ed.2d 546 (1988).

Sidener claims that the alleged acts which implicate him took place from March 1987 through April 1987. Jones was scheduled to appear for sentencing on May 18th and 22nd and her failure to appear is the only violation of a condition of release which Sidener is accused of assisting and conspiring to assist. Sidener claims that he was not aware of Jones' bond and her conditions of release. Finally, Sidener contends that the jury was not presented with evidence of the bond's conditions of release or evidence that Sidener was aware of them. Moreover, the decision not to appear was her own and no evidence was presented that Sidener prevented Jones from attending her sentencing.

Viewing the evidence in a light most favorable to the government, we believe that more than sufficient evidence was presented to sustain a conviction for conspiracy and aiding and abetting. Evidence

was presented that Sidener in a variety of ways assisted Jones and her family leave the country and destroy her records and that he knew that she was convicted and had to appear for sentencing. Although ignorance of the law is no defense, it is worth noting that the defendant is a former police officer and private investigator who must have known that Jones had to appear for sentencing.

In sum, Sidener's grounds for appeal are without merit and his conviction is

AFFIRMED.